UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| RAMADA FRANCHISE SYSTEMS, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | No. 4:03CV1750-DJS |
| ) | |
| BRIDGETON, INC., ANDY PATEL, and ) | |
| RAJ JHALA, ) | |
| ) | |
| Defendants. ) | |

ORDER

On December 8, 2000, plaintiff Ramada Franchise Systems, Inc. ("Ramada") and defendant Bridgeton, Inc. ("Bridgeton") entered into a License Agreement for the operation of a 249-room hotel located at 3551 Pomridge Drive in St. Louis, Missouri. Under the terms of the Agreement, Bridgeton was permitted to use the trade names and service marks of Ramada ("Ramada Marks") in the operation of the hotel. On the date the License Agreement was executed, individual defendants Andy Patel and Raj Jhala provided Ramada with a Guaranty of Bridgeton's obligations under the License Agreement. The Guaranty provides that defendants Patel and Jhala "guaranty that [Bridgeton's] obligations under the Agreement, including any amendments, will be punctually paid and performed." Operations at the hotel thereafter proceeded in accordance with the Agreement.

However, after Bridgeton received failing scores on quality assurance inspections and failed to pay recurring fees for

seven consecutive months, Ramada terminated the License Agreement on April 29, 2003 pursuant to §11.2 of the Agreement. Section 11.2 provides that Ramada could terminate the License Agreement for various reasons including Bridgeton's failure to pay amounts due under the agreement. In the termination letter, Ramada reminded Bridgeton of its obligation to pay the fees due under the agreement and of the obligation to remove all Ramada Marks from the hotel.[1] The hotel closed on October 1, 2004. After Bridgeton failed to pay the amounts owed under the License Agreement and when subsequent inspections revealed that the hotel had not been de-identified, plaintiff filed this action asserting claims based on the License Agreement and Guaranty as well as a claim that Bridgeton has violated the Lanham Act, 15 U.S.C. §§1051 *et seq*. Now before the Court is plaintiff's motion for summary judgment. Plaintiff asserts that it is entitled to summary judgment on both the issue of liability and the issue of damages. Defendants oppose plaintiff's motion.

## Discussion

In considering a motion for summary judgment, the Court must "view all of the evidence in the light most favorable to the nonmoving party and [will] give that party the benefit of all reasonable inferences to be drawn from the facts disclosed in the

---

[1] For purposes of this order, the Court will refer to the process of removing Ramada Marks as the "de-identification" of the hotel.

pleadings." Reich v. ConAgra, Inc., 987 F.2d 1357, 1359 (8th Cir. 1993). "Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." Id. "Although the moving party has the burden of demonstrating the absence of genuine issues of material fact, the 'nonmoving party may not rest upon mere denials or allegations, but must instead set forth specific facts sufficient to raise a genuine issue for trial.'" Burchett v. Target Corp., 340 F.3d 510, 516 (8th Cir. 2003) (quoting Rose-Maston v. NME Hosps., Inc., 133 F.3d 1104, 1107 (8th Cir. 1998)).

Here, defendants have opposed the motion for summary judgment on both the issue of liability and damages. However, in substance, defendants do not dispute the issues of liability. See Defs.' Mem., Doc. #55, p. 1 ("Defendants do not dispute several of the facts that gave rise to Plaintiff's Complaint.") Rather, the core of defendants' opposition is to challenge plaintiff's calculation of damages. The Court below analyzes each of plaintiff's claims and defendants' liability on those claims.

*A. Lanham Act*

Section 32 of the Lanham Act provides that

[a]ny person who shall, without the contest of the registrant-

(a) use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in

3

> connection with which such use is likely to cause confusion, or to cause mistake or to deceive . . .

shall be liable in a civil action by the registrant.

15 U.S.C. §1114(1)(a). Section 43 of the Act also provides, in relevant part:

> Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which–
>
>> (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person . . .
>
> shall be liable in a civil action by any person who believes that he or she is or is likely to be damages by such act.

15 U.S.C. 1125(a)(1)(A).

Here, it is undisputed that following the termination of License Agreement, Bridgeton continued to display some Ramada Marks without the consent of Ramada. While Bridgeton did remove some Marks as weather and finances permitted, it continued to use and display the Ramada Marks until the facility closed on October 1, 2004. Clearly, Bridgeton's unauthorized use of the Ramada Marks in the 18 months following the termination of the License Agreement was "likely to cause confusion" as to the hotel's association with Ramada. Thus, Ramada is entitled to judgment as a matter of law on

Count I of its complaint, which asserts that Bridgeton violated the Lanham Act.

In its motion for summary judgment, plaintiff also seeks to impose liability on the individual defendants for Bridgeton's violations of the Lanham Act. Plaintiff is not entitled to this relief. First, Count I of the complaint, which asserts plaintiff's Lanham Act claim, is brought only against Bridgeton. The Court cannot impose liability on the individual defendants for a claim that is not asserted against them. Secondly, plaintiff attempts to use the Guaranty to impose liability on defendants Patel and Jhala for Bridgeton's Lanham Act violations. However, the Guaranty provides that Patel and Jhala guaranty only Bridgeton's "obligations under the Agreement." Thus, the Guaranty obligates defendants Patel and Jhala only for Bridgeton's obligations under the License Agreement and does not obligate Patel and Jhala to guaranty all of Bridgeton's liabilities. Therefore, individual defendants Patel and Jhala are not liable for Bridgeton's Lanham Act liabilities.

Finally, plaintiff seeks summary judgment on the damages owed by Bridgeton for violating the Lanham Act. However, there exist genuine issues of material fact regarding the Lanham Act damages. The Act provides that when there has been an infringement on a registered mark or a violation of §1125(a), the plaintiff is "entitled, subject to the principles of equity, to recover (1) defendant's profits, (2) any damages sustained by the plaintiff,

5

and (3) the costs of the action." 15 U.S.C. §1117(a). "In assessing profits the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed." Id.

In the case at bar, plaintiff has estimated that Bridgeton had sales of $3,151,080.45 for the period following the termination of the License Agreement until January 28, 2005. This estimate is based on Bridgeton's average monthly revenue for the 2 years immediately prior to the termination of the License Agreement. Plaintiff also asserts that it has suffered $267,841.84 in damages for lost royalties. Bridgeton disputes plaintiff's calculations and argues that the hotel operated at a loss in the period following termination of the License Agreement. Bridgeton has provided the affidavit of Raj Jhala and various tax records in support of its position. Additionally, plaintiff's estimate of Bridgeton's sales does not account for the fact that the hotel closed on October 1, 2004. Thus, as there remain genuine factual disputes regarding the Lanham Act damages calculation, plaintiff is not entitled to summary judgment on the issue of Lanham Act damages.

Finally, the Court notes that the parties have not addressed Count II of the verified complaint in their summary judgment briefs. Count II seeks disgorgement of profits from Bridgeton for infringing upon the Ramada marks. However, as Ramada is entitled to recover Bridgeton's profits, if any, under 15 U.S.C.

§1117(a), court II is duplicative of Count I.  The Court will therefore dismiss Count II.

**B.  *RECURRING FEES***

Count V of the complaint asserts that Bridgeton has breached the License Agreement by failing to pay certain recurring fees under the License Agreement.  Section 7.1 of the Agreement provides: "You [Bridgeton] will pay us [Ramada] certain 'Recurring Fees' in U.S. dollars . . . fifteen days after the month in which they accrue."  In response to the motion for summary judgment, defendants admit that the Recurring Fees were not paid after September, 2002.  Defs.' Resp. to Uncontroverted Facts, Doc. #52, p. 5, ¶46; see also Defs.' Mem., Doc. #55, p. 1.  Thus, as Bridgeton does not dispute that it breached the License Agreement by failing to pay the required Recurring Fees, Ramada is entitled to judgment as a matter of law on Count V.[2]

Although the complaint seeks $93,096.76 in unpaid fees, Ramada now calculates the fees due by Bridgeton to be $83,723,85.  Defendants maintain that there exist genuine issue regarding this calculation.  The Court disagrees.  However, neither is Ramada entitled to recover the full $83,723.85 it seeks.

---

[2]Count VI asserts an alternative basis -- i.e. unjust enrichment -- for recovery of the recurring fees. However, as the Court finds that Ramada is entitled to judgment as a matter of law on Count V, Count VI can be dismissed as moot.

7

Section 7.1 of the Agreement provides that the Recurring Fees include a Royalty Fee and a Ramada Inn National Association ("RINA") Services Assessment Fee. However, §18.4 of the Agreement supersedes §7.1 for the first five years of the Agreement and establishes a flat fee for the Royalty and RINA expenses. During the third year of the License Agreement, the year in which the Agreement was terminated, the monthly fee was $10,500.00. During the previous year, the monthly rate was $10,125.00.

Ramada's calculation of the Recurring Fees includes the flat fee rates for the seven months prior to termination of the Agreement for a total of $71,625.00. However, Ramada's calculation also includes $12,098.85 in other fees including guest services charges and travel agent fees. Ramada maintains that these fees are authorized under the remainder of §7, excluding §7.1, and Schedule C of the License Agreement. The remainder of §7 requires Bridgeton to pay taxes (§7.2), interest on past due amounts (§7.3), and a "Relicense Fee" in the event a transfer occurs (§7.4). Schedule C of the Agreement is referred to in §7.1.2 of the Agreement and clarifies the RINA Fee. However, as §7.1 of the Agreement is superseded by §18.4 during the first five years of the Agreement, any calculations of fees under Schedule C would also be superseded by §18.4. Thus, nothing in any of the provisions cited by Ramada requires Bridgeton to pay the additional $12,098.85. Therefore, the Court will enter summary judgment in Ramada's favor for the amount of $71,625.00 on Count V of plaintiff's complaint.

In addition, §7.3 of the Agreement provides that "[i]nterest is payable when you [Bridgeton] receive our [Ramada] invoice on any past due amount payable to us under this Agreement at the rate of 1.5% per month." The Court has calculated the interest due under the Agreement to be $32,203.13. This calculation represents the monthly fee multiplied by 1.5% multiplied by the number of months the fee was due prior to the date of this order. For example, the first month's payment of $10,125.00 for October, 2002 was due November 15, 2002 and the interest on this amount is $5,011.88 ($10,125.00 X 1.5% X 33 months). The aggregate of the interest due is $32,203.13 and this amount will be added to judgment.

## C. *LIQUIDATED DAMAGES*

In Count III of the complaint, Ramada seeks liquidated damages from Bridgeton under §12.1 of the License Agreement. Section 12.1 of the Agreement provides that if Ramada "terminate[s] the License [Agreement] under Section 11.2 . . . [Bridgeton] will pay [Ramada] Liquidated Damages within 30 days following the date of Termination." Section 18.3 provides that "Liquidated Damages payable under Section 12.1 . . . will be $105,000.00." In response to the motion for summary judgment, defendants admit that Bridgeton breached its obligations under the License Agreement by failing to pay liquidated damages in the amount of $105,000, as calculated under §§12.1 and 18.3 of the License Agreement. Defs.' Resp. to

Uncontroverted Facts, Doc. #52, p. 5, ¶44. Therefore, the Court will grant Ramada's motion with respect to liquidated damages and will enter summary judgment in the amount of $105,000 on Count III of plaintiff's complaint. Plaintiff is also entitled to prejudgment interest on this amount under §7.3 of the Agreement. The Court calculates the interest due to be $42,525.00 ($105,000 X 1.5% X 27 months) and this amount will be added to the judgment.

The Court notes that Count IV asserts an alternative basis to Count III in the event that "the Court determines that Bridgeton is not liable to pay [Ramada] liquidated damages" under §12.1 of the Agreement. Compl., Doc. 1, p. 14, ¶68. As the Court finds that Ramada is entitled to summary judgment on Count III, Count IV will be dismissed as moot.

### *E. GUARANTY*

The Guaranty provided to Ramada by individual defendants Patel and Jhala provides that Patel and Jhala

> irrevocably and unconditionally . . . guaranty that [Bridgeton's] obligations under the Agreement, including any amendments, will be punctually paid and performed.
>
> Upon default by [Bridgeton] and notice from [Ramada] we will immediately make each payment and perform or cause [Bridgeton] to perform, each unpaid or unperformed obligation of [Bridgeton] under the Agreement.

Compl., Doc. #1, Ex. B. Here, it is undisputed that Bridgeton failed to perform its obligations under the Agreement with respect to the Recurring Fees and Liquidated Damages. It is also undisputed that Patel and Jhala have failed to satisfy the

10

obligations of Bridgeton under the License Agreement.  Therefore, the Court will enter summary judgment on Count VII of Ramada's complaint, finding as a matter of law that Patel and Jhala are jointly and severally liable to plaintiff for Bridgeton's damages on Counts III and V.  However, as stated above, defendants Patel and Jhala are not liable for Bridgeton's Lanham Act violations.

*F. Summary*

There is no genuine issue of material fact in this case with regard to defendants' liability to Ramada.  It is clear from the undisputed facts that Bridgeton violated the Lanham Act and failed to pay amounts due under the License Agreement.  It is equally clear that Patel and Jhala failed to pay on Bridgeton's obligations as required by the Guaranty.  Ramada is therefore entitled to summary judgment on Counts I, III, V, and VII of their verified complaint.  Plaintiff is entitled to summary judgment against Bridgeton in the amount of $71,625.00 with regard to the recurring fees (Count V) and $105,000.00 with regard to liquidated damages (Count III).  Plaintiff is also entitled to summary judgment against Patel and Jhala on Count VII of the complaint.

Each of these amounts are subject to prejudgment interest, the total of which the Court has calculated as $74,728.13.  Any award of costs and attorney's fees remains premature, as in this district these issues are handled as post-judgment motion matters pursuant to E.D.Mo. L.R. 8.02 & 8.03.

Therefore, the only issue remaining for trial is the amount of Lanham Act damages owed by Bridgeton on Count I of the complaint.

Accordingly, for all of the foregoing reasons,

**IT IS HEREBY ORDERED** that plaintiff's motion for summary judgment [Doc. #48] is granted in part and denied in part as follows. Summary judgment will be entered against Bridgeton on Counts I, III, and V of plaintiff's complaint and summary judgment will be entered against individual defendants Patel and Jhala on Count VII of plaintiff's complaint. Counts II, V, and VI of plaintiff's complaint will be dismissed as moot.

Dated this ___18th___ day of August, 2005.

                                              /s/Donald J. Stohr
                                              UNITED STATES DISTRICT JUDGE